# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

R. L. MLAZGAR ASSOCIATES, INC.,
    Plaintiff,

v.                                             Case No. 21-CV-932

SPRING CITY ELECTRICAL
MANUFACTURING CO.,
    Defendant.

## ORDER

R. L. Mlazgar Associates, Inc., a Minnesota corporation, brought this action to recover unpaid commissions from Spring City Electrical Manufacturing Co., a Pennsylvania company. Spring City has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, I will grant in part and deny in part Spring City's motion.

**I. BACKGROUND**

    **A. The Parties and the Contract Assignment**

Spring City Electrical Manufacturing Co. manufactures lighting products. *Id.*, ¶ 2; ECF No. 9-1, ¶ 1. In 2016, Spring City and Elan Lighting, Inc., entered into a sales representative agreement ("the Agreement"). *Id.*, ¶¶ 5–6; ECF No. 9-1. Under the Agreement, Spring City retained Elan as its sales representative for Eastern Wisconsin and certain counties in the upper peninsula of Michigan. ECF No. 9, ¶¶ 5–6. Spring City agreed to compensate Elan by commission. *Id.*, ¶ 8; ECF No. 9-1, ¶ 8. The Agreement also included the following clause: "Except as elsewhere provided in this Agreement, the Representative may not, without first obtaining the prior written consent of Spring City,

sell, assign, transfer any or all of its rights, title, interests, or obligations in, on, to, and under this Agreement." ECF No. 9-1, ¶ 15.

In late 2020, R. L. Mlazgar Associates, Inc., purchased the assets and good will of Elan. ECF No. 9, ¶ 9. The purchased assets included Elan's accounts receivable, which, in turn, included certain commissions that had been earned by Elan but not yet paid by Spring City. *Id.* Elan assigned the Agreement to Mlazgar. *Id.*, ¶ 10. Mlazgar is the successor in interest to the rights of Elan under the Agreement. *Id.* The sale closed on October 15, 2020,[1] and Mlazgar and Elan informed Spring City of the transaction shortly afterward. *Id.*, ¶¶ 11–12. Mlazgar also expressed its desire to continue to work for Spring City as an independent sales representative. *Id.*, ¶ 12.

### B. The Disputed Commissions

#### 1. The City of Milwaukee Order

On August 17, 2020, Neher Electrical Supply contacted Brian Haggerty at Elan and requested pricing for lamp poles and other items for a contract with the City of Milwaukee. *Id.*, ¶ 16. The request included an invitation to bid from the City. *Id.* Elan forwarded the invitation to Nicholas Burt and Shane Moyer at Spring City and requested a quote. *Id.*, ¶ 17. On September 8, 2020, Amanda Perez at Elan sent pricing information and other details to Troy Nettesheim at Neher Electrical Supply. *Id.*, ¶ 18. Nettesheim sent a purchase order to Perez on October 16, 2020. *Id.*, ¶ 19. After additional discussions, negotiations, and modifications, Spring City sent an invoice dated March 31, 2021, to Neher Electric Supply in the amount of $447,760. *Id.*, ¶ 20; ECF No. 9-2. Spring

---

[1] The amended complaint states October 15, 2021, but read in context, this is clearly a drafting error.

City received payment for the order. ECF No. 9, ¶ 21. Mlazgar earned a commission of $44,773 on the order, which Spring City refuses to pay. *Id.*, ¶ 22.

### 2. The Broadway Streetscape Order

Spring City and Mlazgar also exchanged numerous emails related to the Broadway Streetscape order in December 2020. *Id.*, ¶ 23. Spring City requested a purchase order from the developer. *Id.* Mlazgar assisted in providing Spring City with the documents and information needed to proceed with the order. *Id.*, ¶ 24. Spring City generated an invoice dated March 31, 2020, for 511 Holdings, LLC, in the amount of $109,140. *Id.*, ¶ 25; ECF No. 9-3. Spring City received payment for the order. ECF No. 9, ¶ 26. Mlazgar earned a commission of $14,540 on the order, which Spring City refuses to pay. *Id.*, ¶ 27.

### 3. The Foxtown Order

On September 22, 2020, Van Harpen Consulting, LLC, contacted Brian Haggerty at Elan and requested a proposal for Spring City luminaries and lamp posts for a contract with Lakeside Development Company for Foxtown Residence. *Id.*, ¶ 28. The next day, Elan contacted Shane Moyer at Spring City for a quote. *Id.*, ¶ 29. On October 2, 2020, Haggerty sent Van Harpen and Lakeside a submittal for review and approval. *Id.*, ¶ 30. On October 29, 2020, Van Harpen informed Haggerty that the order would be placed the following week. *Id.* On November 10, 2020, Haggerty informed Moyer that Spring City should proceed with the order as the down payment was received. *Id.*, ¶ 31. On November 25, 2020, Moyer confirmed receipt of the down payment. *Id.* On December 16, 2020, Haggerty sent Nicholas Burt at Spring City the shipping and billing information for the order. *Id.*, ¶ 32. Burt responded that Spring City has "everything we need to process the order and release it for production." *Id.* Spring City issued an invoice dated March 24, 2021, to Lakeside Development in the amount of $9,336. *Id.*, ¶ 33; ECF No. 9-4. Spring

City received payment for the order. ECF No. 9, ¶ 34. Mlazgar earned a commission of $1,493 on this order, which Spring City refuses to pay. *Id.*, ¶ 35.

#### 4. Other Orders

In addition to its rights as an assignee of the Agreement and independent from its rights under the Agreement, Mlazgar contracted with Spring City to solicit wholesale orders to be compensated by commission. *Id.*, ¶ 13. After its purchase of Elan, Mlazgar continued to solicit sales for Spring City as a sales representative to be compensated by commissions. *Id.* One such opportunity was the City of Waukesha bid from Neher Electrical Supply which Spring City discussed with Mlazgar in February 2021. *Id.*

Mlazgar also earned commission on two additional orders. *Id.*, ¶ 47. Spring City owes Mlazgar $3,771.90 for a $37,719 order from Viking Electric for the City of De Pere and $2,376.40 for a $23,764 order from Gexpro for the City of La Crosse. *Id.*

### C. Spring City's Purported Contract Termination

On February 17, 2021, Spring City sent a letter to Mlazgar that purported to immediately and retroactively terminate the Agreement. *Id.*, ¶ 36. However, Spring City continued extensive communications with Mlazgar on various pending orders after this purported termination. *Id.*, ¶ 37. Plaintiff claims that the Agreement remains in effect. *Id.*, ¶ 40.

On April 13, 2021, Nicholas Burt at Spring City emailed Brian Haggerty at Mlazgar the invoices for the City of Milwaukee, Broadway Streetscape, and Foxtown orders. *Id.*, ¶ 41. Spring City acknowledged and admitted that commissions were owed to Mlazgar on these three sales. *Id.*, ¶ 43. However, Chris Rosenfelder at Spring City stated that Mlazgar was only entitled to $30,244.56 in commissions. *Id.*

### D. Procedural History

Mlazgar commenced this action in state court to recover the unpaid commissions. ECF No. 1. Spring City removed the action to this court and moved to dismiss. *Id.*; ECF No. 6. In response, Mlazgar filed an amended complaint. ECF No. 9. The amended complaint asserts four claims against Spring City: Count I: Wis. Stat. § 134.93; Count II: Breach of Contract; Count III: Unjust Enrichment and Quantum Meruit; and Count IV: Accounting. *Id.*, ¶¶ 55–70. Spring City once again moved to dismiss. ECF No. 12.

## II. DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). I must "accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

### A. Standing

Spring City contends that Mlazgar lacks standing to bring Counts I, II, and IV because the assignment of the Agreement was ineffective. Mlazgar responds that Spring City waived any objection it could have raised about the assignment.

To address this question, I must first identify which state's law governs claims arising under the Agreement. In diversity cases, district courts apply "the substantive law of the state in which the district court sits, including choice of law rules." *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012) (internal citations omitted). In Wisconsin, "parties are free to choose the law governing their contracts," as

5

long as they do not use this "freedom to escape 'important public policies of a state whose law would be applicable if the parties['] choice of law provision were disregarded.'" *Am. Fam. Mut. Ins. Co. v. Cintas Corp. No. 2*, 914 N.W.2d 76, 82 (Wis. 2018) (quoting *Bush v. Nat'l Sch. Studios, Inc.*, 407 N.W.2d 883, 886 (Wis. 1987)). The Agreement's choice of law provision provides: "The terms and provisions of this Agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania without regard to its conflict of law's provisions." The parties have not argued that applying Pennsylvania law will violate an important public policy of Wisconsin. Therefore, I will apply Pennsylvania law to any claims arising under the Agreement.

In Pennsylvania, "[a]bsent an express provision against assignment, the rights and duties under an executory bilateral contract which does not involve personal skill, trust, or confidence may be assigned without the consent of the other party so long as it does not materially alter the other party's duties and responsibilities." *Smith v. Cumberland Grp., Ltd.*, 687 A.2d 1167, 1172 (Pa. Super. Ct. 1997). Under an effective assignment, "the assignee stands in the shoes of the assignor and assumes all of his rights." *Id.* Accordingly, "[i]t is well settled under Pennsylvania law that an assignee of a contract has standing to assert a claim in connection with the contract." *Bricklayers of W. Pa. Combined Funds, Inc. v. Scott's Dev. Co.*, 41 A.3d 16, 33 (Pa. Super. Ct. 2012), *rev'd on other grounds*, 90 A.3d 682 (Pa. 2014). On the other hand, an assignment that is prohibited by contract is ineffective and does not confer standing on the assignee to sue under the contract. *See Concrete Form Co. v. W. T. Grange Const. Co.*, 181 A. 589, 590 (Pa. 1935).

6

The Agreement contains an anti-assignment provision that provides: "Except as elsewhere provided in this Agreement, the Representative may not, without first obtaining the prior written consent of Spring City, sell, assign, transfer any or all of its rights, title, interests, or obligations in, on, to, and under this Agreement." ECF No. 9-1, ¶ 15. Spring City contends that Elan never obtained its written consent before assigning the Agreement, and therefore the assignment was ineffective and cannot confer standing on Mlazgar.

The amended complaint is silent on whether Elan obtained Spring City's written consent before assigning the Agreement to Mlazgar. However, according to the amended complaint, Elan assigned the Agreement to Mlazgar when Mlazgar bought Elan. ECF No. 9, ¶ 10. The sale closed on October 15, 2020, and "Elan and Mlazgar informed Spring City of the transaction shortly afterwards." *Id.*, ¶¶ 11–12. It is not reasonable to infer from these allegations that Elan obtained the written consent of Spring City before the assignment. Therefore, I agree with Spring City that, according to the amended complaint, Elan did not obtain Spring City's prior written consent as required by the Agreement's anti-assignment provision.

That is not dispositive, though, because "the obligor may ratify an otherwise invalid or ineffective assignment by his conduct." *Smith*, 687 A.2d at 1172. Here, Mlazgar has plausibly alleged that Spring City ratified the assignment by its conduct despite the Agreement's anti-assignment provision. Nearly four months elapsed between the assignment and Spring City's attempted termination of the Agreement. During that time, and presumably after Spring City became aware of the assignment, Spring City and Mlazgar continued to work together on the City of Milwaukee, Broadway Streetscape, and

7

Foxtown orders. ECF No. 9, ¶¶ 19–20, 23–24, 30–33, 37. The amended complaint thus adequately pleads Mlazgar's standing to sue under the Agreement.

### B. Count I: Wis. Stat. § 134.93

Spring City also contends Mlazgar is prohibited from bringing Wis. Stat. § 134.93 claims for commission due under the Agreement because the dispute is governed by Pennsylvania law.

As explained above, Pennsylvania law governs any claim arising under the Agreement. The amended complaint alleges that Mlazgar is entitled to the commissions for the City of Milwaukee, Broadway Streetscape, and Foxtown orders as Elan's assignee under the Agreement. Therefore, Mlazgar's Wis. Stat. § 134.93 claims with respect to the City of Milwaukee, Broadway Streetscape, and Foxtown orders are barred by the Agreement's choice of law provision.

Mlazgar does not directly challenge Spring City's choice of law argument. Rather, it contends that Spring City retained Mlazgar as a sales representative under a contract distinct from the Agreement. In the amended complaint, Mlazgar alleges:

> In addition to its rights as an assignee of the Sales Representative Agreement and independent of Mlazgar's rights under said agreement, Mlazgar is an independent sales representative of Spring City as defined by Wis. Stat. § 134.93(1)(b), as it contracted with a principal (Spring City) to solicit wholesale orders to be compensated by commission. These include but are not limited to the City of Waukesha bid from Neher Electrical Supply which Spring City discussed with Mlazgar in February, 2021.

ECF No. 9, ¶ 13. Mlazgar supplements this general allegation by alleging in its response brief that Spring City "contracted with Mlazgar to close out the three sales started by Elan, plus the two additional sales by Mlazgar (City of De Pere and City of La Crosse, Amended Complaint, ¶ 47(a) and (b)), and well as work on the Waukesha opportunity." ECF No. 15 at 11–12.

I may consider "facts alleged by a plaintiff in a brief in opposition to a motion to dismiss '. . . when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint.'" *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997)). The first allegation—that Spring City contracted with Mlazgar to "close out" the City of Milwaukee, Broadway Streetscape, and Foxtown orders—is not consistent with the allegations in the amended complaint. Mlazgar has clearly alleged that it is entitled to the commissions for the City of Milwaukee, Broadway Streetscape, and Foxtown orders as Elan's assignee under the Agreement. However, the latter two allegations—that Mlazgar sold the City of De Pere and City of La Crosse orders and pursued the Waukesha opportunity under a contract distinct from the Agreement—are consistent with the allegations in the amended complaint.

Wis. Stat. § 134.93 provides a cause of action for independent sales representatives to recover commissions that their principal fails to pay. *See* Wis. Stat. § 134.93(5). As alleged in the amended complaint and supplemented by Mlazgar's response brief, Spring City refuses to pay commissions for the City of De Pere and City of La Crosse orders, which Mlazgar earned under a contract distinct from the Agreement. This is sufficient to state a Wis. Stat. § 134.93 claim with respect to the City of De Pere and City of La Crosse orders. As for the Waukesha opportunity, there is no allegation in either the amended complaint or Mlazgar's response brief that it ever matured into a sale or that Mlazgar earned a commission from it. The amended complaint thus fails to state a Wis. Stat. § 134.93 claim with respect to the Waukesha opportunity.

9

### C. Count III: Unjust Enrichment and Quantum Meruit

Spring City also contends that Mlazgar failed to state an unjust enrichment claim. Mlazgar responds that it has pleaded sufficient facts to state an unjust enrichment claim and a quantum meruit claim.

Unjust enrichment and quantum meruit are distinct causes of action. *Ramsey v. Ellis*, 484 N.W.2d 331, 333 (Wis. 1992). Neither doctrine applies, however, when the parties have entered into a contract. *See Cont'l Cas. Co. v. Wisconsin Patients Comp. Fund*, 473 N.W.2d 584, 587 (Wis. Ct. App. 1991) (unjust enrichment); *Gorton v. Hostak, Henzl & Bichler, S.C.*, 577 N.W.2d 617, 624 n.13 (Wis. 1998) (quantum meruit). Under Count III, Mlazgar incorporates by references all preceding paragraphs of the amended complaint. ECF No. 9, ¶ 61. That includes the allegations regarding the Agreement and the contract distinct from the Agreement discussed above. Therefore, Mlazgar fails to state an unjust enrichment or quantum meruit claim because its entitlement to payment allegedly stems from two contracts.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Spring City's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Mlazgar's Wis. Stat. § 134.93 claims with respect to the City of Milwaukee, Broadway Streetscape, and Foxtown orders are dismissed with prejudice. Mlazgar's Wis. Stat. § 134.93 claim with respect to the Waukesha opportunity is dismissed without prejudice. Mlazgar's unjust enrichment and quantum merit claims are dismissed without prejudice.

**IT IS ORDERED** that a telephonic status conference will be held on **March 17, 2022 at 10:45 a.m.** The court will initiate the call. Counsel must email the court prior to the call at AdelmanPO@wied.uscourts.gov to provide contact information.

Dated at Milwaukee, Wisconsin, on this 2nd day of March, 2022.

        s/Lynn Adelman_____
        LYNN ADELMAN
        United States District Judge